

08/24/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BRYAN R. UTLEY, | § | Case No. 07-42759 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| JHON CYBUSKI, CYBUSKI FAMILY, LTD. and CYBUSKI MANAGEMENT TRUST, | § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adv. Proc. No. 08-4111 |
| | § | |
| BRYAN R. UTLEY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

In this adversary proceeding, the Plaintiffs are seeking a nondischargeable judgment against the Defendant based on claims of fraud while acting in a fiduciary capacity, 11 U.S.C. § 523(a)(4), and willful and malicious injury, 11 U.S.C. § 523(a)(6). The Court previously granted the Plaintiffs a partial summary judgment with respect to their § 523(a)(6) claim, leaving for trial the issue of whether the Defendant possessed the requisite intent. The Court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334. This Memorandum Opinion embodies the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.[1]

---

[1] To the extent any factual finding is construed to be a conclusion of law, the Court adopts it as such. Likewise, to the extent any conclusion is construed to be a finding of fact, the Court adopts it as such.

1

## I. Background

In 1989, Jhon Cybuski founded a company known as Cytronics Technology. The company was profitable in every quarter (except one quarter around September 11, 2001). Its annual sales had grown to $45 million by 2003.

Cytronics designed and assembled unique rack mount servers for On Command Video Corporation, which was one of the company's largest customers. On Command is in the business of manufacturing and installing proprietary video systems in hotels. On Command would purchase the component parts and inform Cytronics of how many servers it needed. Cytronics would then assemble the servers and deliver them to On Command or On Command's clients.

On Command occasionally returned parts or computers to Cytronics for a variety of reasons. On Command shipped the returned items to Cytronics' warehouse in Carrollton, Texas. On Command typically returned its servers, which were especially large, on pallets. Prior to returning the servers to Cytronics, On Command shrink-wrapped the pallets and labeled them. (Bryan Utley's testimony that On Command's products were not clearly labeled and segregated from items returned by other customers at all relevant times was not credible.)

In March 2003, Jhon Cybuski sold his company to Bryan Utley and Bryan's father, Clyde Utley. Jhon had known Bryan for many years, and Byran was the president of Cytronics. Bryan's father, Clyde, claimed to own approximately $3 million in assets and provided financial statements to third party lenders in order to secure financing for the purchase of Cytronics.

The total sales price was approximately $5.5 million. Since Bryan was not particularly wealthy, they structured the deal so that he and his father could borrow a lump sum to pay Jhon immediately, with the remainder to be paid over time. At the closing of the sale, Jhon received $1.5 million in cash and a promissory note for $700,000 from Bryan and Clyde Utley. In addition, the parties executed a Consulting and Non-Competition Agreement, which required the Utleys to make 84 monthly payments of $68,500 to Jhon. The sale and loan documents reflect that Cytronics' had more than $800,000 in its bank accounts at the time of the sale.

Bryan was married with minor children, a home, and roots in Plano, Texas, when he purchased Cytronics. After the sale, he continued to manage the company's day-to-day operations. Jhon visited once or twice a month pursuant to his consulting agreement. The Utleys made five of the monthly payments (plus a partial payment) under the consulting agreement.

Two significant events occurred in the late summer or fall of 2003. First, Bryan divorced and was seeking to sell his home pursuant to the divorce decree. Second, Wells Fargo bank called a $250,000 - $500,000 note[2] secured by, among other things, Cytronics' stock. Bryan testified that he had been unaware of the existence of the note, which related to one of Jhon Cybuski's other businesses, when he purchased Cytronics. Bryan testified that he contacted Jhon Cybuski about the note and that he also notified Cytronics' primary lender, Bank of America. Bryan's testimony that Cytronics did not have enough cash on hand to repay the Wells Fargo note was not credible.

In or around September 2003, Bryan Utley abruptly shut down Cytronics, fired its employees, and sold its inventory. On Command's servers also disappeared from the

---

[2] Bryan testified that he could not recall the precise amount of the note.

warehouse at some point prior to or during the liquidation of Cytronics' inventory. Jhon learned of the liquidation from his former employees, and authorities commenced a criminal investigation. In October 2003, Bryan joined his father and current wife in Costa Rica.[3] They subsequently moved to Columbia, his current wife's native country, in order to obtain less expensive medical care for Bryan's elderly father.

Cybuski Family, Ltd. and Cybuski Management Trust brought a collection action against the Utleys in Texas state court in October 2003. The Cybuski plaintiffs, who had a secured interest in Cytronics' assets, obtained an injunction preventing the Utleys from interfering with their attempts to obtain accounts receivable and otherwise mitigate their damages. Lexington Insurance Company intervened in the action in March 2004 pursuant to its subrogation rights and insurance contracts with On Command.

In the petition in intervention filed by Lexington Insurance Company on behalf of On Command, On Command asserted claims for breach of contract and conversion under Texas state law. On Command alleged that it informed Cytronics that it would not require the assembly of any more servers in mid to late December 2001. On Command alleged that Cytronics delivered already-assembled servers to On Command in shipments of various sizes until February 2003. On Command alleged that, in August 2003, it learned that its servers were being sold on the market at a greatly discounted price. On Command further claimed that Bryan Utley, not Cytronics, received the proceeds of the unauthorized sales.

The Utleys were represented by counsel in the state court action, and they eventually filed an answer and counterclaim. However, Bryan failed to appear for a court-ordered mediation in the state court action. The Utleys also failed to appear for

---

[3] Bryan testified that he met his current wife while visiting his father in Costa Rica.

court-ordered depositions and to provide requested documents, among other things. Accordingly, the Cybuski plaintiffs moved for "death penalty" sanctions. Although the Utleys received notice of the motion as well as the hearing on the motion, they did not appear for the scheduled hearing on February 14, 2005.[4]

At the conclusion of the February 14th hearing, the state district court entered an order finding that the Utleys had engaged in a pattern of discovery abuse. The court further found that their conduct warranted the striking of their answer and counterclaim and the entering of a default judgment. The state court's order reflects that the hearing was evidentiary. Following the hearing, the Utleys filed a motion requesting the state court to reconsider its order. The state court denied the Utleys' request and, on March 29, 2005, entered a final default judgment against the Utleys.

The final default judgment reflects that the state court considered affidavits from the Cybuski plaintiffs in support of the judgment. The final default judgment ordered the Utleys, jointly and severally, to pay On Command $679,986.84 in actual damages plus

---

[4] At a hearing on a pre-trial motion for summary judgment in this adversary proceeding, Bryan Utley submitted an affidavit denying that he received notice of a trial in the state court action. Bryan's affidavit appeared to the Court to be carefully crafted – the state court did not conduct a "trial." Bryan's affidavit did not dispute that he received notice of the sanctions motion or the hearing scheduled by the state court on the motion. Indeed, the Utleys sought reconsideration of the state court's sanctions order prior to entry of the default judgment. The Court also notes that the arguments at the summary judgment hearing suggest that Bryan's present counsel attended the hearing on the sanctions motion and may have been less than forthright to this Court in his arguments relating to whether Bryan received due process prior to the entry of the final default judgment.

interest and costs of court. Lexington Insurance Company subsequently entered into a Joint Collection Agreement and Assignment of Claim with the Plaintiffs.[5]

Bryan Utley returned to Texas in November 2007. Upon his return, he was arrested on a writ of attachment for contempt of court in connection with the state court proceeding. Bryan filed a Chapter 7 bankruptcy case the following week. The Plaintiffs subsequently brought this action against Bryan as the assignee of On Command's interest in the judgment against the Utleys.

At the trial in this adversary proceeding, Bryan Utley provided conflicting testimony about what happened to On Command's property. The Court generally found Bryan's testimony to lack credibility. More particularly, his testimony that his ailing father disposed of the servers to spite Jhon Cybuski or to pay Cytronics' debts lacked credibility. His testimony that Jhon Cybuski secreted On Command's property in boxes, claiming the contents were his personal property, was not credible. His testimony that he did not abruptly release all of Cytronics' employees was not credible. His testimony that his counsel advised him to leave behind potentially exculpatory documentary evidence when he abandoned Cytronics was not credible. Finally, his testimony that he was forced to shut down Cytronics because Wells Fargo called a $250,000 note was not credible

---

[5] In his arguments at the trial of the Plaintiffs' adversary complaint, Bryan's counsel suggested that the assignment is ineffective because it was not signed by On Command, and the Plaintiffs did not submit documentation establishing the authority of Lexington Insurance Company over On Command's claims. However, the Utleys did not challenge Lexington Insurance Company's ownership of and subrogation to the claims of On Command in the state court action. Lexington Insurance Company, standing in On Command's shoes, filed a petition in intervention and obtained a judgment against the Utleys in the state court action. It is too late now for the Utleys to complain that Lexington Insurance Company is not, in fact, authorized to prosecute On Command's claims or to assign those claims to the Plaintiffs.

inasmuch as Cytronics had in excess of $800,000 in liquid cash in its bank accounts only a few months before and had a long history of profitability.[6]

## II. Legal Discussion

As a threshold matter, the parties dispute the preclusive effect of the state court judgment in this adversary proceeding. Parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability, although the bankruptcy court retains exclusive jurisdiction to ultimately determine the dischargeability of the debt. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 11 (1991). In deciding the preclusive effect of a state court judgment, federal courts look to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985).

Texas law provides that a non-answer default judgment (or a default judgment entered after the answer has been stricken)[7] has preclusive effect where the court enters the judgment after conducting a trial or hearing at which the plaintiff meets his evidentiary burden. *See Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997). In particular, a party is collaterally estopped from raising an issue when: "(1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the

---

[6] Significantly, the Utleys' claims and defenses in the state court action involved the calling of the Wells Fargo note, and the state court found those claims and defenses to be entirely without merit.

[7] Under Texas law, once the court strikes the defendant's answer as a discovery sanction, the defendant is placed in the same legal position as if he had filed no answer at all. *See Minnick v. State Bar of Tex.,* 790 S.W.2d 87, 89 (Tex. App. -- Austin 1990, writ denied); *Assicurazioni Generali, S.p.A. v. Milsap,* 760 S.W.2d 314, 317 (Tex. App. -- Texarkana 1988, writ denied). As in a no-answer default judgment, the defendant is deemed to have admitted all of the plaintiff's allegations with respect to liability. *See Fiduciary Mortg. Co. v. City Nat. Bank of Irving,* 762 S.W.2d 196, 200 (Tex. App. -- Dallas 1988, writ denied).

parties were cast as adversaries in the first case." *Id.* Each of these elements must be met in order to trigger collateral estoppel. However, with respect to the first element, "a party given the opportunity to participate fully in the litigation may not defeat the application of collateral estoppel by simply refusing to participate." *Ex parte Serna*, 957 S.W.2d 598, 608 (Tex. App. -- Fort Worth 1997, pet. ref'd). Thus, as discussed at the summary judgment hearing and more fully below, the state court's final default judgment precludes Bryan from disputing that he converted On Command's property and breached the contract with On Command, and that he is liable for the conversion and the breach of contract.

### A. Willful and Malicious Injury (11 U.S.C. § 523(a)(6))

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." In the Fifth Circuit, "[w]illful and malicious injury requires either a subjective intent to cause harm or an objective substantial certainty of harm." *Raspanti v. Keaty (In re Keaty),* 397 F.3d 264, 273-74 (5th Cir. 2005) (citing *Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598, 606 (5th Cir. 1998)). Injuries that are negligently or recklessly inflicted are insufficient to meet the requirements of § 523(a)(6) -- they must be willful. *See Kawaauhau v. Geiger,* 523 U.S. 57, 64 (1998); *In re Keaty,* 397 F.3d at 269-270. Willful conversion of another's property, for example, falls within § 523(a)(6).[8] *See*

---

[8] To establish conversion of personal property under Texas law, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; and (3) the plaintiff suffered injury. *United Mobile Networks, L.P. v. Deaton,* 939 S.W.2d 146, 147-48 (Tex. 1997); *Apple Imports, Inc. v. Koole,* 945 S.W.2d 895, 899 (Tex. App. -- Austin 1997, pet. denied).

8

*Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.,* 783 F.2d 480, 486 (5th Cir. 1986)).

The Fifth Circuit has acknowledged that a breach of contract may involve an intentional or substantially certain injury. *See Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams),* 337 F.3d 504, 510 (5th Cir. 2003) (citing *Texas v. Walker,* 142 F.3d 813, 823 (5th Cir. 1998); *Miller,* 156 F.3d at 606). In *Walker,* the debtor committed the tort of conversion by keeping professional fees instead of remitting them to his employer, the University of Texas, in violation of his employment contract. The Fifth Circuit maintained the distinction between an injury under § 523(a)(6) and an intentional tort in *Walker,* concluding that the debtor's conversion of professional fees did not inflict a willful and malicious injury. However, "*Walker* suggest[ed] that a knowing breach of a clear contractual obligation that is certain to cause injury may prevent discharge under § 523(a)(6), regardless of the existence of separate tortious conduct." *In re Williams,* 337 F.3d at 510. In its subsequent opinion in *Williams,* the Fifth Circuit expressly held that § 523(a)(6) "excepts contractual debts from discharge when those debts result from an intentional or substantially certain injury." In order to determine whether this has occurred, a court must look at the knowledge and intent of the debtor at the time of the breach. *See id.*

In this proceeding, On Command asserted claims against Bryan Utley for conversion and breach of contract in the state court action. Bryan initially denied the claims, but the state court struck his answer following an evidentiary sanctions hearing. Bryan received notice of the sanctions hearing but failed to appear. The state court found that the Utleys' conduct demonstrated they were not planning to appear for trial or any

related proceedings, and they were deliberately avoiding the reach of the state court. The Utleys' tactical or procedural maneuvering in the state court action is the sort that should be discouraged -- not rewarded. Under Texas rules of issue preclusion, even though the Utleys' answer was struck, due process was satisfied and issue preclusion is appropriate under the circumstances. *See In re Pancake*, 106 F.3d at 1244-45.

However, in the state court action, the Cybuski plaintiffs did not allege willful and maliciousness, and willful and maliciousness is not a necessary element for the tort of conversion under Texas law. Neither the state court's Final Default Judgment nor the findings contained in the Orders on the Motions for Sanctions contain specific factual findings on the issue of Bryan's intent to harm On Command or whether there was an objective substantial certainty of harm. Thus, the issue for trial was whether Bryan's actions were willful and malicious within the meaning of § 523(a)(6).

The Court, having considered the evidence adduced at trial, as well as the credibility of the witnesses, concludes that they were. Bryan knew the pallets of servers in Cytronics' warehouse belonged to On Command, and he knew the servers were valuable. He knew that selling those servers and other component parts to third parties was substantially certain to cause financial loss to On Command as well as expose its proprietary systems and technology. Bryan nonetheless converted On Command's property to his personal use. Even assuming that Bryan did not have a subjective motive to harm On Command, Byran acted with a substantial certainty of harm to On Command. Further, even if the Court were to credit Byran's story that the servers simply disappeared from the warehouse, Bryan failed to offer evidence that he took any precautions to ensure the safety of On Command's property as he was winding down Cytronics' business. The

Court, therefore, concludes that Bryan's debt to On Command under the final default judgment entered by the state court is nondischargeable under § 523(a)(6).

### B. Fraud in a Fiduciary Capacity (11 U.S.C. § 523(a)(4))

The Plaintiffs also assert a § 523(a)(4) claim for nondischargeability. Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). Under this provision, the meaning of "fiduciary" is narrower than it is under general common law. The Fifth Circuit has discussed the concept of a "fiduciary" in the following terms:

> Under § 523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of § 523(a)(4).
>
> Statutory trusts, by contrast, can satisfy the dictates of § 523(a)(4). It is not enough, however, that a statute purports to create a trust: A statute cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary." Rather, to meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable *res* and (2) impose "trust-like" duties.

*Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 - 43 (5th Cir. 1998).

Fraud for purposes of this exception means intentional deceit. *See G.W. White & Son, Inc. v. Tripp (In re Tripp)*, 189 B.R. 29 (Bankr. N.D. N.Y. 1995); *McDaniel v. Border (In re McDaniel)*, 181 B.R. 883 (Bankr. S.D. Tex. 1994). Defalcation is a willful neglect of duty. *See Office of Thrift Supervision v. Felt* (*In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001). Unlike fraud, defalcation does not require actual intent, and a debtor may be guilty of defalcation regardless whether or not accompanied by fraud or embezzlement. *Id.* The defalcation determination turns on the issue of whether a breach

11

of fiduciary duty was "willful." *See Moreno v. Ashworth,* 892 F.2d 417, 421 (5th Cir. 1990). The Fifth Circuit describes the "willful neglect" of a fiduciary duty as "essentially a reckless standard." *Schwager v. Fallas*, 121 F.3d 177, 185 (5th Cir. 1997).

In this case, Bryan does not dispute that he owed a fiduciary duty to Cytronics as an officer of the company. This duty encompassed, at a minimum, not converting the assets of Cytronics' clients to his personal use. *See Matter of Moreno*, 892 F.2d 417, 421 (5th Cir. 1990) (affirming nondischargeable judgment where officer lent corporation's money to himself). Moreover, Bryan is not shielded from liability for his own wrongdoing by the corporate entity. *See, e.g., Pace Corporation v. Jackson*, 284 S.W.2d 340 (Tex. 1955); *First Nat'l Bank in Canyon v. Gamble*, 132 S.W.2d 100 (Tex. 1939).

However, Cytronics is not the plaintiff in this proceeding. The Plaintiffs failed to establish that the contract with On Command imposed trust-like duties upon Cytronics or its officers. *See R.E. Am., Inc. v. Garver (In re Garver),* 116 F.3d 176, 179 (6th Cir. 1997) ("The mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation; an express or technical trust must also be present." (citations omitted)). While the Fifth Circuit has "not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable," the Plaintiffs failed to establish such a relationship between Bryan and On Command in this case. *In re Gupta,* 394 F.3d 347 (5th Cir. 2004) (citations omitted).

### III. Conclusion

For the foregoing reasons, the Court concludes that the Plaintiffs met their burden to show by a preponderance of the evidence that the Final Default Judgment is

nondischargeable under § 523(a)(6).  However, the Plaintiffs failed to meet their burden to establish nondischargeability under § 523(a)(4).  The Court will enter a separate Judgment consistent with this Memorandum Opinion.

Signed on 1/28/10

*Brenda T. Rhoades*    SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE